IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIJAH FLORENCE | :     CIVIL ACTION |
| v. | : |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY | :     NO. 06-4571 |

**MEMORANDUM RE: SOCIAL SECURITY**

**Baylson, J.**                                                                                             **February 29, 2008**

**I.     Introduction**

Plaintiff, Elijah Florence ("Florence," "Plaintiff"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner," "Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"), 42 U.S.C. §§ 401-455, 1381-1383(c). Jurisdiction is established under § 405(g) of the Act. For the reasons that follow, the court will deny Plaintiff's motion (Doc. No. 8) and enter judgment in favor of Defendant, affirming the decision of the Commissioner.

**II.     Procedural Background**

Plaintiff protectively filed for disability insurance benefits and supplemental security income on March 16, 2004. The claim was denied on April 30, 2004. Plaintiff requested a

hearing, which was held in front of Administrative Law Judge Craig De Bernardis ("ALJ") on April 8, 2005.  A continuation of the hearing was scheduled for June 6, 2006, but Plaintiff did not appear.  The ALJ issued a decision unfavorable to Plaintiff on July 25, 2006.  Plaintiff requested review.  The Appeals Council denied the request for review on September 20, 2006, making the ALJ's decision the final decision of the Commissioner.  Plaintiff then brought this civil action on October 13, 2006.

### III.    Parties Contentions

Plaintiff makes several claims: (1) that the ALJ inappropriately rejected the findings of Plaintiff's treating physicians in the case (Pl.'s Brief, supra, at 8); (2) that the ALJ gave an inadequate justification for dismissing Plaintiff's testimony as not credible (Id. at 8); (3) that the ALJ did not adequately assess Plaintiff's impairments because he dismissed Plaintiff's claim that his vision was impaired due to his "primary open angle glaucoma"  (Id. at 12); (4) that ALJ inadequately developed the record by not soliciting more information about Plaintiff's emotional impairments (Pl.'s Brief supra,  at 12); and (5) that the ALJ made several mistakes in his discussion of the record.

Defendant responds that (1) the ALJ acted within his discretion in rejecting the conclusions of Doctors Salzman and Ruth because their findings were not well-supported by substantial medical evidence (Def.'s Resp. to Req. for Review of Pl., at 2); (2) the ALJ complied with the regulations when he determined Plaintiff was not fully credible because Plaintiff had made inconsistent statements to the agency and medical consult, and that the neurological findings did not wholly support Plaintiff's claim that he could not do any type of work (Id. at 6); (3) Plaintiff's assertion that ALJ erred in not questioning the vocational expert on Plaintiff's

visionary limitation has no merit because Dr. Fernandes's discussion of Plaintiff's vision did not attach any functional limitations to Plaintiff's mild visual impairment (Id. at 10); (4) the ALJ fully developed the record by providing Plaintiff's counsel the opportunity to question his client about his emotional state and even providing a second hearing for further questioning, at which Plaintiff did not appear. (Id.); and (5) Defendant did not specifically answer these claims.

**IV.     Legal Standard**

The standard of review of an ALJ's decision is plenary for all legal issues. See Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). The scope of the review of determinations of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision. See Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). As such, "[t]he Court is bound by the ALJ's finding of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999); see also Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986) (holding if "an agency's fact finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings"). The Court must not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (internal quotation omitted).

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The district

court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." Id.  Accordingly, this Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

In order to establish a disability under the Social Security Act, a claimant must demonstrate that he suffers from a mental or physical impairment that prevents his from engaging in substantial gainful activity for a period of at least twelve months.  42 U.S.C. § 423(d); Stunkard v. Sec'y of HHS, 841 F.2d 57, 59 (3d Cir. 1988).

Under 20 C.F.R. 404.1520, 416.920 (2006), there is a five-step sequential evaluation process to determine whether a person is disabled.  Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004).  The fact-finder must determine: (1) if the claimant currently is engaged in substantial gainful employment; (2) if not, whether the claimant suffers from a "severe impairment;" (3) if the claimant has a "severe impairment," whether that impairment meets or equals those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and thus is presumed to be severe enough to preclude gainful work; (4) whether the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment; and (5) if not, whether the claimant is capable of performing other jobs existing in significant numbers in the national economy in view of the claimant's age, education, work experience and residual functional capacity ("RFC").  Id.  If there is an affirmative finding at any of steps one, four or five, the claimant will be found "not disabled."  20 C.F.R. § 404.1520(b)-(f).  See also Brown v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Plaintiff carries the initial burden of demonstrating by medical

4

evidence that he or she is unable to return to his or her former occupation.  <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 406 (3d Cir. 1979).  Once the Plaintiff has done so, the burden shifts to the Commissioner to show the existence of substantial gainful employment the claimant could perform.  <u>Id.</u>

**V.      Facts**

Plaintiff was born on January 19, 1963. (R. 48).  He graduated from high school and can communicate in English.  (<u>Id.</u> at 69).  He worked as a cook between the years of 1998 and 2003.  (<u>Id.</u> at 64).  He claims he became unable to work on November 5, 2003, as a result of the injuries he sustained from a SEPTA bus accident on April 24, 2002, when he was traveling on a bus that was hit from behind by a truck.  (<u>Id.</u> at 161).  Plaintiff was not seen at a hospital on the day of the accident. (<u>Id.</u> at 155).  Plaintiff claims that he quit his job as a chef at Allegheny Hospital and St. Joseph's College because of pain in his legs and back which he has experienced constantly since his accident on the SEPTA bus.  (<u>Id.</u> at 80-85).

Plaintiff claims that he suffers from polyarthritis, depression, hypertension, lumbar radiculopathy, glaucoma, and carpal tunnel syndrome.  (Pl.'s Brief and Statement of Facts in Support of Request for Review at 1).  He was 40 years old at the time of the alleged onset of the disability and is therefore defined as a younger individual (age 18-44) for the purpose of this inquiry.  <u>See</u> 20 CFR 404.1564 and 416.964 (defining younger individual for purposes of social security inquiry).

On February 19, 2005, Plaintiff's treating physician, Dr. Salzman, completed a detailed questionnaire on Plaintiff's condition in which he stated that Plaintiff was temporarily disabled and could not work due to constant lower back pain and pain in his left knee.  (R. at 89).  He

asserted that Plaintiff could not do even low stress work.  Dr. Salzman filled out a similar questionnaire on July 22, 2004, in which he again stated that Plaintiff was temporarily disabled.  (Id. at 108-112).  Again on March 11, 2005, Dr. Salzman certified to welfare authorities that Plaintiff was temporarily disabled due to hypertension and polyarthritis.  (Id. at 130).

Dr. Ruth, an orthopedic surgeon who also treated Plaintiff on several occasions, diagnosed Plaintiff with possible bilateral carpal tunnel syndrome, L3-S1 spondylosis, bilateral knees osteoarthritis and bilateral knees mild degenerative joint disorder.  (Id. at 149, 173).  He filled out a detailed questionnaire regarding Plaintiff's residual functional capacity on June 7, 2006, in which he described Plaintiff's prognosis as "guarded."  (Id. at 216-219).  He stated that Plaintiff required a job that would allow him to change positions frequently, but that Plaintiff could tolerate a moderate amount of stress at his job.  (Id. at 217).  He stated that Plaintiff would have to take four unscheduled breaks in any work day but that Plaintiff could sit at a job for up to four hours in a work day and could stand/walk less than two hours in a day.  (Id).  Dr. Ruth also stated that Plaintiff would have to be absent from his job more than four times a month as a result of his impairments.  (Id. at 219).

Dr. Ved Gupta evaluated Plaintiff on July 26, 2005, at the request of the Pennsylvania Bureau of Disability Determination.  Dr. Gupta wrote that Plaintiff suffered from nerve damage in his legs, hypertension, and pain in his back and legs.  (Id. at 161-164).  His report indicates that Plaintiff told him that after he was in the accident with the SEPTA bus, he was taken to the hospital.  (Id. at 161).  Dr. Gupta concluded that Plaintiff suffers from chronic injuries of the lumbar spine and lower extremities, chronic low back pain with left-sided sciatica, ambulation dysfunction, limitation from other physical activities, and chronic pain syndrome.  (Id).  He

6

found that Plaintiff would be unable to work at jobs that require moderate to heavy physical exertion, including significant ambulation, climbing stairs, and lifting. (Id). He recommended that Plaintiff have intense physical therapy, pain management, and psychological support. (Id. at 164). He also found that Plaintiff had bilateral carpal tunnel syndrome. (Id. at 170).

The ALJ found that Plaintiff suffered from three severe impairments: disorders of the spine; degenerative joint disease of the knees; and carpal tunnel syndrome. (Id. at 13). However, the following impairments were not found to be severe: the ALJ found that Plaintiff had produced no evidence of nerve compression in his back and that he retained the ability to ambulate effectively. (Id). The ALJ found that Plaintiff had produced no evidence of significant or persistent disorganization of motor function in the extremities, resulting in sustained disturbance of gross or dexterous movements. (Id). The ALJ found that Plaintiff's vision, which corrected can be 20/30, did not limit him from performing any basic work function. (Id). The ALJ found that Plaintiff did not establish a severe cardiac impairment. (Id).

The ALJ found that Plaintiff is not entitled to disability benefits because Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1. (R. at 13).

The ALJ found that Plaintiff had not engaged in substantial gainful activity as defined by 20 C.F.R. 404.1520(b) since the date at which he claimed he became disabled. (R. at 11). He found that Plaintiff had severe impairments, disorders of the spine and degenerative joint disease of the knees, and carpal tunnel syndrome, (Id. at 13), but that those impairments were not medically equal to one of the listed impairments in 20 C.F.R. 404 Subpart P, Appendix 1. (Id). Therefore, Plaintiff's claim failed at step three of the test set out in 20 C.F.R. 404.1520.

The ALJ found that Plaintiff could not return to his work as a cook, but that considering his age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that, therefore, he was not disabled under 20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966. (R. at 21). Pursuant to the recommendations of the vocational expert, the ALJ found that Plaintiff could still do some kinds of sedentary work, such as a surveillance systems monitor, a charge account clerk, or a credit checker. (R. at 21).

## VI. Discussion

### A. The ALJ Acted Within his Discretion When He Did Not Credit Treating Physicians' Opinions

The Court of Appeals for the Third Circuit has repeatedly noted that "a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). See also Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)); 20 C.F.R. 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record). However, an ALJ has discretion to reject the opinions of even treating physicians if their findings are not well-supported by medically acceptable clinical and laboratory diagnostic techniques or they are inconsistent with other substantial evidence in the record. 20 CFR §§ 404.1527(d)(3),(4) (2006).

With respect to Plaintiff's two treating physicians, Dr. Salzman and Dr. Ruth, the ALJ did not afford their findings much weight because the ALJ found that the opinions given by these doctors were not consistent with the objective medical evidence in the record and were unsupported by diagnostic tests.  (R. at 20).  The ALJ's decision, which indicates careful consideration of the medical records and the evidence presented by Plaintiff at the hearing, held that the doctors opinions were largely based upon Plaintiff's unsubstantiated and subjective claims of pain and discomfort.  (Id. at 15).  For example, the ALJ discusses Plaintiff's first appointment with Dr. Salzman, which occurred on February 19, 2004.  (Id. at 91).  At the appointment, Plaintiff complained of pain in his leg.  Without doing any imaging studies or laboratory tests, Dr. Salzman diagnosed Plaintiff with polyarthritis, hypertension, muscle spasms, and depression.  Based on this examination, Dr. Salzman certified to the welfare authorities that Plaintiff was temporarily disabled until February 19, 2005, due to polyarthritis, depression, and hypertension. (R. at 89).  The ALJ also considered Dr. Salzman's diagnosis of temporary disability on July 22, 2004, (Id. at 109) and March 11, 2005. (Id. at 130).  In all instances, the ALJ concluded that Dr. Salzman's findings were based on Plaintiff's claims of pain, rather than objective medical testing and therefore not supported by adequate medical evidence.  (R. at 20).

Where Plaintiff's claims of severe medical impairments are mainly supported by Plaintiff's claims of pain, an ALJ may look at other evidence in the record to see if Plaintiff's pain is severe enough make substantial gainful activity impossible; the ALJ may give less weight to claims of pain if they are not supported by the evidence in the record.  See Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990).  In the instant case, the ALJ considered Plaintiff's claims of severe pain along with Plaintiff's statements that he walks to doctors' appointments, uses public

transportation, prepares simple meals for himself, and climbs stairs nearly everyday. The ALJ found Plaintiff's claims of severe pain not credible. (R. at 19). This conclusion is supported by the record as a whole.

With respect to Dr. Ruth's conclusion regarding Plaintiff's limited residual functional capacity (Id. at 216-219), the ALJ was within his discretion to determine that Dr. Ruth's conclusions were not supported by medical evidence. As the ALJ wrote in his opinion, Dr. Ruth's treatment notes, which record his observations about Plaintiff over the course of more than three years and eight office visits, describe most of Plaintiff's conditions as "mild" (Id. at 149, 150, 155, 159), do not recommend surgery (Id. at 149, 158), and recommend home exercises as treatment (Id. at 150, 152, 158); Dr. Ruth's treatment notes also report mild tenderness, slight spasm of the lumbar spine, mild lumbar radiculopathy, mild degenerative joint disease of the knees and mild tenderness in Plaintiff's hands. (Id. 147-160). The ALJ found that these findings and recommendations are inconsistent with Dr. Ruth's later conclusion regarding Plaintiff's limited residual functional capacity. (Id. at 216-219).

The ALJ's analysis of Plaintiff's residual functional capacity makes accommodation for the musculoskeletal impairments noted by Dr. Ruth. To accommodate Plaintiff's lumbar disorder and degenerative joint disease of the knees, the ALJ's conclusions as to Plaintiff's residual functional capacity limit lifting, carrying, standing, and walking to the minimum. (Id). To address Dr. Ruth's finding that Plaintiff experiences mild pain in his hands, the ALJ limits Plaintiff's residual functional capacity for fingering to "frequently" rather than "constantly." (Id). These conclusions indicate a careful and objective assessment of Dr. Ruth's evaluation of Plaintiff's condition.

### B.     ALJ was Justified in Determining Plaintiff's Testimony was not Credible

Florence contends that the ALJ's adverse credibility determination regarding Plaintiff's testimony was erroneous. When making credibility findings, the ALJ must indicate which evidence he rejects and which he relies upon as the basis for his findings. <u>Schaudeck v. Commissioner of Social Sec. Admin.</u>, 181 F.3d 429, 433 (3d Cir. 1999). These findings must be specific enough to permit the Court to ascertain which evidence the ALJ accepted, which evidence he rejected, and why. <u>Cotter v. Harris</u>, 642 F. 2d 700, 705 (3d Cir 1981).

In the instant case, the ALJ set out legitimate and detailed reasons for his decision in a clear and logical manner. First, the ALJ pointed out several inconsistencies in what Plaintiff told Dr. Salzman and what he told Dr. Gupta. See <u>Burns v. Barnhart</u>, 312 F.3d 113, 129-30 (3d Cir. 2002) (holding that inconsistencies in Plaintiff's testimony or daily activities permit an ALJ to conclude that some or all of Plaintiff's testimony about his limitations or symptoms is less than fully credible). These inconsistencies include: first, Plaintiff told Dr. Gupta that he had a history of lumbar radiculopathy in his right and left leg when treatment notes from Drs. Ruth and Salzman note this condition only in Plaintiff's right leg. Second, Plaintiff told Dr. Gupta that he had poor bladder control, a symptom which he never mentioned to Drs. Ruth or Salzman. Third, as stated above, the severe level of pain that Plaintiff claimed to suffer from did not correspond to the activities he claimed to be able to perform: walking a block, using public transportation, and preparing simple meals for himself. (R. 18-19). The Court concludes that Plaintiff's inconsistencies provide an adequate basis for the ALJ to discredit Plaintiff's testimony. <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 555 (3d Cir. 2005) (holding that it is legitimate for an ALJ

to discredit Plaintiff's testimony because claimed limitations do not match Plaintiff's activity level).

        C.      **ALJ Adequately Assessed Plaintiff's Visual Impairment**

Plaintiff contends that the ALJ did not adequately assess all of his impairments because he declared that there was no evidence that Mr. Florence's impaired vision, which when corrected is 20/30, created any limitations of his vision which would prevent him from performing basic work functions. (R. at 13). Plaintiff correctly states that in determining whether an impairment is of sufficient medical severity to render a person disabled, the ALJ must consider the combined effect of all a claimant's impairments. 20 C.F.R. § 404.1523. However, the Court holds that the ALJ did adequately discuss Plaintiff's visual impairment because the effect of this condition on Plaintiff's residual functional capacity is so minor, it does not warrant any further discussion. Williams v. Barnhart, 399 F. Supp.2d 640, 644-45 (E.D.Pa. 2005) (holding that ALJ did not err in mentioning claimant's obesity but not considering it as an impairment because it was not severe and did not limit his functional capacity). Plaintiff has presented no evidence as to how his visual impairment might limit his ability to do any job. Thus, the ALJ was not required to evaluate this condition at any length as there is no evidence that it prevents Plaintiff from doing any type of substantial gainful activity.

        D.      **ALJ Did not Fail to Develop the Record**

Plaintiff claims that ALJ failed in his duty to fully and fairly develop the record because he did not order a psychiatric or psychological consultation. Cintron v. Bowen, 686 F. Supp. 522, 524 (E.D.Pa. 1988) (holding that ALJ has a duty to develop the record). Plaintiff correctly notes that Dr. Salzman stated that Plaintiff was depressed. (R. at 91). However, this allusion to

Plaintiff's condition on it's own is not enough to put the burden on the ALJ to have Plaintiff psychologically evaluated. Plaintiff had an opportunity to present evidence of his depression at his first hearing on June 6, 2006, but he did not. A second hearing was convened for Plaintiff at which evidence of a mental disability could also have been presented, but Plaintiff failed to appear. While the ALJ has a duty to develop the record, the burden is on Plaintiff to present evidence of his disability. Podeworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

The ALJ is not required to employ the assistance of a psychiatrist or a psychologist in making his determination in all circumstances. According to the Commissioner's regulations, a consultative examination is required when a "conflict, inconsistency, ambiguity, or insufficiency in the evidence must be resolved, . . . or there is an indication of a change in [plaintiff's] condition that is likely to affect [his] ability to work, but the current severity is not established. 20 C.F.R. § 404.1519a(b)(4)-(5). This does not mean, however, that the ALJ must do a Plaintiff's lawyer's job for him by bringing up issues that Plaintiff had the opportunity to raise but chose not to.

      E.     **Mistakes in ALJ's Report are not Material**

Plaintiff correctly points out that the ALJ's opinion contains a few minor errors. However, the Court does not believe that these inconsistencies are material and therefore we need not remand this case in order to correct them. The Court will outline these mistakes below.

First, the ALJ was incorrect to assert that Dr. Salzman's questionnaire is less credible because Dr. Salzman may have dictated the report to his assistant rather than filling it out in his own hand. (Pl.'s Br. supra, at 3). It is of little weight whether the doctor wrote out his own work or ordered it written out by a member of his staff: as long as he signed the work, it can be

13

considered his own.  Second, the ALJ incorrectly asserted that Dr. Salzman provided inconsistent responses to welfare authorities, sometimes claiming Plaintiff was permanently disabled and at other points asserting that Plaintiff was temporarily disabled.  In fact, Dr. Salzman's responses appear to have been consistent, at least in the record provided to the Court.  (See R. at 89, 109, 130. )  However, the ALJ had other, legitimate, reasons for not crediting Dr. Salzman's conclusions. Third, the ALJ found that Plaintiff could lift up to ten pounds occasionally and frequently.  (Id. at 14).  The ALJ should have explained why these findings differed from Dr. Gupta's conclusion that Plaintiff could lift only five pounds occasionally and frequently, but he did not.  (Id. at 168).   However, even if the ALJ was incorrect in assessing that Plaintiff could lift ten pounds, Plaintiff can still perform the work in the jobs suggested by the vocational expert and adopted by the ALJ.  (See R. at 21) (stating that Plaintiff could be a surveillance systems monitor, a charge account clerk, or a credit checker).

      The Court finds that these mistakes do not warrant overturning the ALJ's decision.

### VII.    Conclusion

      For the foregoing reasons, this Court affirms the decision of the ALJ. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIJAH FLORENCE | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE, | : | NO. 06-4571 |

AND NOW, this 29th day of February, 2008, upon careful and independent consideration of Plaintiff Elijah Florence's Motion for Request for Review and the Response and Reply thereto (Doc. Nos. 8, 10, and 11), and upon review of the record, it is hereby ORDERED that:

(1) The Clerk shall transfer this case from the Civil Suspense File to the current docket for final disposition;

(2) Plaintiff's Motion (Doc No. 8), Brief and Statement of Issues in Support of Request for Review, is DENIED;

(3) Plaintiff's Complaint is DISMISSED;

(4) Judgment is entered in favor of Defendant, affirming the decision of the Commissioner of Social Security, and against Plaintiff;

(5) The clerk shall marked this case CLOSED for statistical purposes.

BY THE COURT:

s/Michael M. Baylson

_____
Michael M. Baylson, U.S.D.J.

O:\CIVIL\06-4571 Florence v. Astrue\06-4571 memorandum opinion.wpd